## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| IH 1, Inc., et al., | : | Case No.: 09-10982 (PJW) |
| | : | |
| Debtors, | : | (Jointly Administered) |
| | : | |
| GEORGE L. MILLER, | : | |
| Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No.: 10-52279 (PJW) |
| | : | |
| SUN CAPITAL PARTNERS, INC., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## DECLARATION OF DOUGLAS C. GESSNER, P.C.

I, Douglas C. Gessner, am an attorney admitted to practice in Illinois, and am a partner of the law firm of Kirkland & Ellis LLP ("Kirkland"). I submit this declaration in support of the Sun Capital Defendants' Opposition to Plaintiff's Motion to Disqualify Kirkland & Ellis LLP. I have personal knowledge of the facts stated in this declaration, which are true and correct, and could competently testify as to each if called to do so.

1.      Sun Capital Partners, Inc. and/or certain of its affiliates ("Sun Capital") are collectively one of Kirkland's largest clients. Kirkland began representing Sun Capital in February 2000.

2.     In August 2005, Sun Capital asked Kirkland to represent it and certain of
its affiliated private investment funds in Sun Capital's effort, along with other investors,
to acquire Indalex from a subsidiary of Honeywell International Inc.  That effort was
successful, and the acquisition closed on February 2, 2006.

3.     Prior to February 2, 2006, Kirkland provided services to Sun Capital, not
Indalex and it was not until after Sun Capital acquired Indalex that Kirkland began
providing services directly to Indalex.

4.     From the closing of the acquisition, Sun Capital affiliates, through their
investment in Sun Indalex, LLC owned over 90% of the outstanding common stock of
Indalex Holdings Finance, Inc., the holding company that oversaw the operations of all of
the Indalex companies.  Sun Capital representatives held a majority of the seats on
Indalex Holdings Finance, Inc.'s, and each of its subsidiaries', boards of directors.

5.     Sun Capital affiliates also provided advisory and consulting services to
Indalex pursuant to a Management Services Agreement, through which Sun Capital
affiliates gained access to Indalex's business records and information.

6.     Attached as Exhibit A is a true and correct copy of the February 2, 2006
Management Services Agreement entered into between Indalex Holding Corp., Indalex
Limited, and Sun Capital Partners Management III, LP.

7.     Attached as Exhibit B is a true and correct copy of the retention letter
between Kirkland and Indalex, dated February 2, 2006.

8.     Kirkland first began providing legal services to Indalex after the closing,
in February 2006.  Kirkland last performed work for Indalex in March 2009.

2

9.      With respect to the plaintiff's motion to disqualify Kirkland, the plaintiff has identified 11 categories of legal services provided by Kirkland for Indalex that the plaintiff alleges relate to the plaintiff's complaint, filed on July 30, 2010. The scope and extent of Kirkland's work with respect to each of the categories of legal services identified by the plaintiff is discussed below.

### The Management Services Agreement

10.      Plaintiff identifies several time entries relating to the Management Services Agreement between Sun Capital Partners Management III, LP and Indalex. The Management Services Agreement, however, was negotiated prior to Sun Capital's acquisition of Indalex and executed at the closing. All work performed by Kirkland with respect to the drafting and execution of that agreement was performed on behalf of Sun Capital.      The only Kirkland attorney performing any work with respect to the Management Services Agreement following its execution was Michael D. Wright, who spent a total of 2.25 hours on work performed at the request of, and for the benefit of, Sun Capital. That work was billed to Indalex pursuant to Sun Capital and Indalex's contractual arrangement requiring Indalex to reimburse Sun Capital for all outside legal expenses incurred in connection with the parties' relationship.

### Reviewing Indalex's 2006 10-K

11.      Plaintiff identifies Kirkland's review of Indalex Holdings Finance, Inc.'s Form 10-K for the year 2006, in particular, charges billed to Indalex for Kirkland's review of that document between March 14, 2007 and April 2, 2007. The attorneys at Kirkland involved in reviewing and commenting on Indalex's 2006 10-K were James

3

Rowe, Elisabeth Martin, Chad Keetch, David Johanson, and Ted Frankel. Kirkland's sole function in reviewing the 10-K for Indalex was to ensure compliance with the technical aspects of applicable SEC rules and regulations. No Kirkland attorney provided Indalex advice or legal services relating to the underlying financial data disclosed by Indalex. The Kirkland time entries that reflect this work total approximately 33.75 hours. Those time entries, however, include many other unrelated tasks that are not segregated within billing blocks, including work related to drafting, revising, and analyzing credit documents, exchange offer materials, press releases, and a 314(b) opinion.

### Revising An April Earnings Release

12.     Plaintiff asserts that a single time entry of 0.5 hours on March 29, 2007 from James Rowe, who reviewed an earnings release, demonstrates that Kirkland performed legal services related to the allegations in the complaint. However, Mr. Rowe's work during that half hour consisted solely of ensuring compliance with the technical aspects of the SEC rules and regulations applicable to earnings releases. Mr. Rowe did not assist in the drafting of the earnings release itself, and he did not provide any advice or legal services related to the financial information disclosed by Indalex.

### Review of Materials Related to Dividend from Proceeds of AAG Sale

13.     Plaintiff identifies numerous time entries related to a possible dividend from the proceeds of the then-anticipated sale of AAG. In addition to the attorneys discussed in other sections, Ted Frankel, Jeremy Liss, David Johanson, and I performed limited legal work related to Indalex's declaration and payment of a dividend from the proceeds of the AAG sale. With respect to the AAG sale and the resulting dividend,

4

Kirkland did not provide any analysis with respect to Indalex's financial condition. Instead, Kirkland's advice related to Indalex's legal obligations relating to the AAG transaction. For example, Mr. Frankel, who billed 6.5 hours related to this subject, was one of the primary attorneys representing Sun Capital in the 2006 acquisition of Indalex. Accordingly, Mr. Frankel's advice to Indalex was limited to providing institutional knowledge regarding Indalex's obligations under the various acquisition agreements and providing the basic requirements for dividends under Delaware law. In total, not including the more specific categories discussed below, Kirkland billed a total of 10.0 hours to this work.

### Review of April 2007 10Q

14.    Plaintiff identifies "charges between May 8, 2007 and May 18, 2007 relating to the [second quarter] Form 10-Q" filed by Indalex Holdings Finance, Inc. Elisabeth Martin and Chad Keetch are the two Kirkland attorneys that performed work for Indalex related to this issue.[1] Kirkland's review of the second quarter 2007 10-Q consisted solely of analyzing the disclosure for compliance with SEC requirements. Neither Mr. Keetch nor Ms. Martin provided any advice or legal services relating to any financial disclosures made by Indalex. Mr. Keetch, who has since left the firm, billed a total of 21.5 hours to this matter. Ms. Martin billed 2.5 hours to this matter.

---

[1]    Other Kirkland lawyers billed time relating to this issue. But this additional advice related solely to the timing of the filing and the review and drafting of a 12b-25 statement allowing for an extension.

### Revising a May Earnings Release

15.    Plaintiff identifies two time entries totaling 2.75 hours on May 15, 2007 charged by James Rowe and Carol Anne Huff relating to Kirkland's review and comment on Indalex's May 2007 earnings release. Kirkland's work for Indalex on this release consisted solely of ensuring that the disclosures therein were compliant with the company's obligations under relevant SEC rules and regulations. Neither Mr. Rowe nor Ms. Huff provided any advice or comments on the underlying financial data included in the earnings release.

### Reviewing and Revising Pro Forma Financial Statements

16.    The plaintiff identifies three time entries related to "reviewing, discussing and revising pro forma financial statements in mid-May 2007." The attorneys responsible for those two entries were James Rowe and Carol Anne Huff, both partners in Kirkland's capital markets group. The total time spent with respect to those entries, which also included: (i) review of a related tender offer to the bondholders; and (ii) research and analysis regarding covenant obligations under Indalex's indenture, was 7.5 hours. The sole purpose of Kirkland's review was to ensure compliance with relevant SEC disclosure requirements. Neither Mr. Rowe nor Ms. Huff provided any advice or comments on the underlying financial data included in the pro forma statements.

### Review and Comment on FTI Solvency Opinion

17.    Plaintiff identifies "[c]harges between May 30, 2007 and June 1, 2007 relating to FTI including eight separate entries relating to FTI's solvency 'opinion' including entries for three different Kirkland & Ellis lawyers to review and comment on

6

drafts of FTI's 'opinion' and for Kirkland & Ellis lawyers to discuss the 'opinion' with both FTI and Sun." The Kirkland attorneys responsible for these entries, which total 17.75 hours, were Jeremy S. Liss, Brandon B. Smith, and me. All of the comments provided by Mr. Liss, Mr. Smith, and me with respect to the FTI solvency opinion related to the technical requirements of the Delaware statute and addressed whether the opinions set forth in FTI's opinion adequately addressed those requirements. Neither Mr. Liss, Mr. Smith, nor I provided any analysis or advice with respect to FTI's analysis or conclusions regarding the Debtors' financial condition.

## Drafting, Reviewing and Revising Board Resolutions

18.    Plaintiff identifies time entries for drafting, reviewing and revising Indalex Board Resolutions relating to the May/June 2007 dividend. The Kirkland attorneys who billed time to this matter were Ted Frankel, David Johanson, and me. Kirkland billed only 10.25 hours to this matter. In connection with this review, no Kirkland attorney provided any opinion or advice with respect to the solvency of Indalex or whether the proposed dividend would constitute an avoidable transfer. Kirkland's work revolved solely around whether Indalex's resolutions met the technical requirements required under relevant Delaware law and Indalex's various indenture and credit agreements.

## Work Relating to Sale-Leaseback Transactions

19.    Plaintiff identifies charges relating to the sale-leaseback transactions contemplated and undertaken in May 2008. As an initial matter, the law firm of Klehr Harrison Harvey Branzburg & Ellers LLP handled the actual sale-leaseback transactions. Kirkland's involvement was limited to credit agreement and indenture compliance and

related environmental issues. From January through May 2008, Kirkland attorneys Sean O'Brien (who left the firm in June 2008), Carol Anne Huff, Michael Wright, Christian Semonsen, Natalia Sokolova, Elizabeth Martin, James Rowe, and Roberto Miceli billed a total of 52.5 hours on leaseback issues. No Kirkland attorney performed any work or provided advice with respect to the value of the transferred property or the substantive terms of the return lease. Christian Semonsen, a partner in Kirkland's environmental practice, billed a total of 5.5 hours relating to environmental matters associated with the sale of real estate.

### Work Relating to 2008 Loans

20.    Plaintiff identifies "[d]ozens of separate entries relating to the equity infusions made by Sun Capital in 2008." The actual drafting and documentation of Sun Capital's 2008 loans, which were incorporated into the existing credit agreement with JP Morgan, was handled by the law firm of Cravath, Swaine & Moore LLP. Although a portion of Kirkland's time in this matter was related to assisting Indalex in the execution of the loan agreement documented by JP Morgan and Cravath, the vast majority of time entries related to Kirkland's work on behalf of Sun Capital regarding: (i) intercreditor issues between JP Morgan and Sun Capital in connection with Sun Capital's infusion of capital into the existing credit facility; and (ii) the formation of a new Sun Capital-related entity to act as the lender under the transaction. The following attorneys billed time to these matters, Michael Wright, Carol Anne Huff, David Johanson, Angela Russo, Jeremy Liss, Natalia Sokolova, Jeff Quinn, Charla Willian, Helen Griffiths, Seth Traxler, Elisabeth Martin, and me.

8

I declare subject to penalty of perjury that the foregoing is true and correct.

Executed on December 8, 2010.

_____

Douglas C. Gessner, P.C.