## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE: IH 1, Inc.,** *et al.,* | : | **CASE NO. 09-10982-PJW** |
| | : | |
| **Debtors** | : | |
| | : | |
| **GEORGE L. MILLER,** | : | |
| **Chapter 7 Trustee,** | : | **ADVERSARY NO.  10-52279-PJW** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **SUN CAPITAL PARTNERS, INC., et al.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants.** | : | |

### DECLARATION OF JAMES A. STEMPEL

1.      I am an attorney admitted to practice in Illinois, and am a partner of Kirkland & Ellis LLP ("Kirkland").  I submit this declaration in support of the Sun Capital Defendants' Opposition to the Plaintiff's Motion to Disqualify Kirkland & Ellis LLP.

2.      The information provided in this declaration is based upon my review of the record and my personal observations and, to the best of my knowledge and belief, is true and correct.

### *Interactions With The Debtors In Possession*

3.     The debtors have been aware of Kirkland's representation of Sun Capital Partners, Inc. and/or certain of its affiliates ("Sun Capital") adverse to the debtors since before the first day of the debtors' bankruptcy proceedings.[1]

4.     Indeed, leading up to the debtors' petition date of March 20, 2009, I had numerous conversations with the debtors' bankruptcy counsel, Young, Conaway, Stargatt & Taylor, in my role as counsel for Sun Capital.

5.     Further, all pleadings filed by the debtors in the above-captioned bankruptcy case were served on myself and Kirkland, expressly identifying Kirkland as counsel for Sun Capital. *See, e.g.*, Indalex Holdings Finance, Inc. 2002 Service List as of March 27, 2009, a copy of which is attached hereto as **Exhibit A** (reflecting mandatory service of all pleadings on James Stempel and Eric Chalut of Kirkland & Ellis LLP on behalf of Sun Capital).

6.     Though the debtors never sought to formally pursue any avoidance actions against Sun Capital (opting ultimately to stipulate to the Official Committee of Unsecured Creditors' standing to do so), I had several communications with counsel for the debtors relating to potential actions.

7.     In particular, in the context of the debtors' proposed debtor-in-possession financing and use of cash collateral throughout the cases, I had several discussions with counsel for the debtors regarding the deadline for the Official Committee of Unsecured Creditors (the "Official Committee") to investigate and file any avoidance actions against Sun

---

[1]     The debtors are Indalex Holdings Finance, Inc., Indalex Holding Corp., Indalex Inc., Caradon Lebanon, Inc., and Dolton Aluminum Company.

Capital (the "Investigatory Period") and the limitations on uses of cash collateral for such purposes. *See, e.g.,* 5/1/09 Final Order (I) Authorizing The Debtors (A) To Obtain Post-Petition Financing Under 11 U.S.C. § 105, 361, 362, 364(c)(1), 364(c)(2), (364(c)(3), 364(d)(1) And 364(e) And (B) To Utilize Cash Collateral Under 11 U.S.C. § 363 And (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, 363, And 364 ("Final DIP Order"), Dkt. no. 223, a copy of which is attached hereto as **Exhibit B** (containing limitation on right of debtors or the unsecured committee to pursue avoidance actions against Sun Capital).

8.     I also discussed and coordinated with debtors' counsel with respect to the process for responding to the Official Committee's informal discovery requests in its investigation of potential actions against Sun Capital.

9.     In addition to specific discussions relating to potential avoidance actions against Sun Capital, I both directly and, through one or more other Kirkland partners and associates, was in contact with debtors' counsel on numerous material matters relating to the chapter 11 cases and proceedings (most significantly, matters relating to the sale of substantially all of the debtors' assets, the DIP financing, and cash collateral use issues), many of which placed Sun Capital directly adverse to the debtors' interests.

10.     At no time during any of my numerous conversations with debtors' counsel did the debtors ever object to Kirkland's representation of Sun Capital in any aspect of the debtors' bankruptcy, let alone with respect to Kirkland's representation of Sun Capital relating to potential avoidance actions that might be asserted on behalf of the debtors' estate.

3

***Interactions With The Official Committee***

11.     In my role as counsel for Sun Capital, I also had numerous communications with counsel for the Official Committee, Michael J. Roeschenthaler of McGuireWoods, LLP.

12.     As the asset sale approached, the Official Committee's interaction with Sun Capital centered almost entirely on the Official Committee's investigation and the potential for filing avoidance actions against Sun Capital.    This interaction consisted of communications by and among Mr. Roeschenthaler on behalf of the Official Committee, Mr. Nestor on behalf of the debtors, and me on behalf of Sun Capital.  In connection with the Official Committee's expressed intent to file such an action, the Official Committee negotiated and entered into four stipulations relating to extending the Investigatory Period to bring avoidance actions against Sun Capital.   *See* 6/26/09 Stipulation Extending the Investigatory Period With Respect To Prepetition Term Lender, Dkt. no. 407; 7/20/09 Second Stipulation Extending the Investigatory Period With Respect To Prepetition Term Lender, Dkt. no. 504; 8/18/09 Third Stipulation Extending the Investigatory Period With Respect To Prepetition Term Lender, Dkt. no. 592; 9/11/09 Fourth Stipulation Extending the Investigatory Period With Respect To Prepetition Term Lender, Dkt. no. 627, copies of which are attached hereto as group **Exhibit C**.

13.     Each of these four stipulations was negotiated with, and authorized and/or executed by, me on behalf of Sun Capital.

14.     While I was in discussions with the Official Committee concerning the above stipulations, the Official Committee researched the potential disqualification of Kirkland.  I know this from my review of the fee petition filed by the Official Committee's attorneys. *See*

4

7/16/09 Third Monthly Fee Application Of McGuireWoods, LLP, Counsel For The Official Committee Of Unsecured Creditors, For Allowance Of Compensation And Reimbursement Of Expenses For The Period From June 1, 2009 Through June 30, 2009, Dkt. no. 494, at 29, a copy of which is attached hereto as **Exhibit D**.

15.    On August 10, 2009, this Court granted the Official Committee derivative standing to pursue all avoidance actions against Sun Capital on behalf of the debtors' estate. That stipulation and the related order were provided to me in advance of submission to the Court for purposes of obtaining Sun Capital's approval.  *See* 8/10/09 Order Approving Stipulation Granting The Official Committee Of Unsecured Creditors Derivative Sanding To Assert Claims And Causes Of Action Against Certain Entities By And Between The Official Committee Of Unsecured Creditors And The Debtors, Dkt. no. 575, a copy of which is attached hereto as **Exhibit E**.

16.    As detailed in the Motion of the Official Committee of Unsecured Creditors to Convert the Debtors' Chapter 11 Cases to Chapter 7 Cases Pursuant to 11 U.S.C. § 1112(b) (the "Conversion Motion"), Dkt. no. 655, attached hereto as **Exhibit F**, in connection with the Court's granting of derivative standing, the Official Committee served Sun Capital with a draft adversary complaint in July Of 2009, identifying the identical claims now set forth in the plaintiff's Complaint.  Conversion Motion at ¶¶43-44.  A copy of the Official Committee's draft complaint is attached hereto as **Exhibit G**.

17.    The Official Committee's draft complaint was originally served on me as counsel for Sun Capital to, in the words of the Official Committee, "stimulate settlement discussions." **Exhibit F**, Conversion Motion at ¶44.

5

18.     Though the Official Committee suggested in the Conversion Motion that no "meaningful settlement discussions ensued," I had numerous conferences and communications with Mr. Roeschenthaler with respect to the draft complaint, including discussions regarding filing deadlines, informal discovery, and the potential settlement parameters for all alleged claims against Sun Capital, all in my role as counsel for Sun Capital.

19.     At no time during any of my numerous conversations with the Official Committee's counsel did the Official Committee ever object to Kirkland's representation of Sun Capital in any aspect of the debtors' bankruptcy, let alone with respect to Kirkland's representation of Sun Capital relating to potential avoidance actions outlined in the Official Committee's draft complaint.

20.     After it became apparent by September 2009 that the parties were not going to consensually resolve the Official Committee's claims, the debtors, the Official Committee, and Sun Capital ultimately negotiated an agreed order converting the debtors' chapter 11 cases to chapter 7 proceedings.

21.     Again, all negotiations with respect to the conversion were handled or supervised by me on behalf of Sun Capital.

### Interactions With The Trustee

22.     Following conversion of these cases to chapter 7 on October 30, 2009, the Trustee was appointed.

23.     Counsel for the Trustee was immediately placed on notice of Kirkland's representation of Sun Capital with respect to all matters relating to Sun Capital's secured

claims, including the matters relating to the potential avoidance actions provided in the Official Committee's draft complaint.

24.    Indeed, from the date of the Trustee's appointment, I had numerous communications and conferences with both the Trustee and his counsel, Peter Hughes of Dilworth Paxson, relating to these chapter 7 cases in general, the liens Sun Capital has consistently asserted from the outset of the chapter 11 cases (and the trustee's threats to challenge these liens), the collection of assets, and the Official Committee's draft complaint.

25.    In particular, following the Trustee's appointment, Kirkland negotiated with the Trustee's counsel for an additional extension of the Investigatory Period to allow the Trustee to examine the Official Committee's claims. 12/21/09 Order Extending Investigatory Period By 120 Days, Dkt. no. 805, a copy of which is attached hereto as **Exhibit H**.

26.    During that time period, as counsel for Sun Capital, my Kirkland colleagues and I had frequent communications and conferences with Mr. Hughes, including conversations discussing the Official Committee's draft complaint and other actions asserted against Sun Capital by the Trustee on behalf of the debtors' estates.

27.    Along those lines, in January, the Trustee filed and served pleadings to initiate litigation adverse to Sun Capital regarding the allocation of proceeds received by the debtors' estates on account of the sale of the debtors' assets. From the outset, Kirkland actively represented Sun Capital with respect to that litigation, including appearing before the Court for hearings, working on agreed discovery processes, and otherwise interacting with the Trustee as counsel for Sun Capital. Of particular note, that litigation deals with the identical

term loans, liens, and right to sale proceeds at issue in the above-captioned adversary proceeding.

28.    At no time during these discussions did Mr. Hughes object to Kirkland's representation of Sun Capital based upon its prior representation of the debtors.

29.    Starting in January 2010, Mr. Hughes' partner, Ms. McIlvain, also corresponded with Kirkland concerning the production of documents to the Dilworth Paxson firm. *See* 1/28/10 Ltr. from M. McIlvain to J. Rowe; 3/16/10 E-mail from P. Helms to M. McIlvain; 3/22/10 E-mail from P. Helms to M. McIlvain; 3/30/10 E-mail from P. Helms to M. McIlvain; 3/31/10 Ltr. from P. Helms to M. McIlvain, copies of which are attached hereto as group **Exhibit I**.    In her communications with Kirkland relating to its production of documents, Ms. McIlvain did not raise any concern over Kirkland's representation of Sun Capital in these bankruptcy proceedings.

30.    Further, in March, as we continued to try to resolve certain working capital adjustment issues with SAPA related to the chapter 11 sale of the debtors' assets, adversarial discussions with the Trustee continued.    During frequent communications, the Trustee threatened to derail the working capital settlement and again threatened to bring actions challenging Sun Capital's liens against the estate.    As had been the case throughout the debtors' bankruptcy proceedings, all of these communications were funneled through me (and Kirkland) as counsel for Sun Capital.

31.    At no time during those discussions did Mr. Hughes object to Kirkland's representation of Sun Capital based upon its prior representation of the debtors.

8

32.     To the contrary, Mr. Hughes actively engaged Kirkland in negotiations and on April 28, 2010, Mr. Hughes sent me a settlement offer proposing a "Global Settlement," offering Sun Capital a full release for all the estate's claims, including the claims made in the above-captioned adversary proceeding. *See* 4/28/10 E-mail from P. Hughes to J. Stempel, a redacted copy of which is attached hereto as **Exhibit J**.

33.     While we were able to negotiate a settlement with respect to the working capital allocation, the parties did not agree to a settlement on the alleged avoidance actions at that time.

34.     Accordingly, when the initial extension was coming to an end, Kirkland represented Sun Capital with respect to the Trustee's motion seeking an additional ninety day extension to the Investigatory Period.

35.     Again, the Trustee did not object to Kirkland's representation of Sun Capital based upon Kirkland's prior representation of debtors.

36.     The first time the Trustee placed Kirkland on notice of a potential motion to disqualify was on August 16, 2010, when his counsel sent my partner, Michael Duffy, an e-mail in response to Kirkland's request for an extension of time for the Sun Defendants to respond to the Trustee's complaint in this adversary proceeding. *See* 8/16/10 E-mail from M. McIlvain to M. Duffy, a copy of which is attached hereto as **Exhibit K.**

I declare subject to penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2010.

James A. Stempel.